Crabb, J.
delivered the opinion of the court. The plaintiff below, who is also the plaintiff in error, insists that the circuit judge gave erroneous directions to the jury on the questions of law arising in the cause.
He is said to have erred — 1st. In enumerating the circumstances from which the jury might infer fraud. The judge told the jury, “ that if Stephen Farmer made the conveyance to Littleberry Farmer with the intent to defraud his then wife of her dower, such conveyance, so far as it injured the rights of his wife, was void; that he thought liis principal object in making the conveyance might be to defraud creditors,and although an intention to defraud creditors is not in strictness of law the same thing as an intent to defraud the widow of her do-wer, yet they are not inconsistent with each other: that if Stephen Farmer did not get a valuable consideration for the land, and if the conveyance obviously tended to defeat her dower, if made in the absence of his wife, when he expected and believed she would not return, and said he wanted his children to have all the property, these are circumstances proper for the consideration of the jury, and if from them, and other proof in the cause, they believed the conveyance was made to defraud her of her dower, then the conveyance to Lit-berry Farmer was void.”
Although the expressions used by the judge in bis enumeration of circumstances, are not precisely the words of the witnesses; yet, as it appears to us, there is no material *327 difference between them; and we consider this part of the charge sufficiently accurate in its explication of the law.
It docs not require argument to prove, that a man who is at once husband and debtor, may at the same moment intend, and by the same act consummate an alienation of his property, which in the eye of the law is equally a fraud against the wife and the creditor. It is no less clear, that the same circumstances which prove a fraud upon the rights of one, may often conduce to show fraud also against the other. If a man married and deeply in debt make a conveyance of all his estate to his son, no one will deny that this evidences a fraud as against his creditors. Is it not as obviously a fraud also against his wife? She is entitled by law to one third of all the lands, &c. of which the husband died seized or possessed; and he is not at liberty to deprive himself of the seizen or possession at the {iis death, with intent to defeat her of her dower, by conveyance fraudulently made to children or otherwise. Now the fact of her being defeated of dower, is conclusively demonstrated by this proof; for, the son getting all, she can get none. Is not the intent fraudulently to defeat her right shown as conclusively ? Must he not have intended that she should get none, when he conveyed all to another? and must it not have been done fraudulently as to her, as it occurred without the presence of necessity, being without any valuable consideration, and when he knew it would deprive his wife of that provision for her support which the law provides for her? There can be but one answer to these inquiries. If the fact that the husband conveyed all his property, or all his real estate to his son, affords proof so strong, that he intended fraudulently to defeat her of her dower, shall it be said that the conveyance of a large portion of it affords no proof of the same thing? Although it may be less conclusive, yet it cannot be affirmed that it does not conduce to the establishment of the same proposition. The effect of the proof increases in proportion to the amount of the estate conveyed, compared with the amount retained. If the tendency of a conveyance of all is to defeat her altogether of dower, certainly the tendency *328 of a conveyance of part is to defeat her of dower in part. And the intention to defraud is surely shown by its being; done in privacy, in the absence of the wife, and accompa-Med with expressions indicating an updue anxiety that his children should get all of his property, in exclusion of others entitled to share with them, although he might not expressly say his wife ivas one of the persons he wished to exclude.
2d. But the part of the directions to the jury to which the plaintiff most strenuously objects is the opinion, that he could not rely successfully on the ground of his having been a purchaser from a purchaser for a valuable consideration without notice of the fraud. Several authorities have been cited on this point in the brief, and in the argument. They, with such others as we could find here relating to the subject, have been carefully examined by us, as well as the acts of assembly, particularly 1784, ch. 22, sec. 8,9,10; and the whole subject has received so much of the consideration its importance merits as was consistent with other claims upon our attention.
It is certainly true as a general rule, that the plea of purchase for a valuable consideration without notice, is a de-fence to be relied on for the protection of a person in possession against the claim of another not in possession, or in the language of some of the cases, as a shield to protect one’s own possession, but not as a sword to attack that of others.
That there is no possible case in which one out of possession can rely on this doctrine as a means of getting in, we shall not assert, but wc are convinced that such instances are of rare occurrence. Wc view this doctrine as peculiarly the creature of a court of equity, seldom introduced into courts of law, except when the necessity for its use arises out of some statutable regulation, sanctioning inquiries and examinations to be made in a court of law, which, but for the regulation, would be more properly the subject of equitable cognizance.
But without pursuing these inquiries further, and without giving any definite opinion upon the subject, we are *329 completely satisfied that it has no application to the question before the court. We think this question depends upon the true construction of the 8 th section of the act of 1784. The section provides, “ that if any person shall die intestate, or shall make his last will and testameut, and not therein make any express provision for his wife, by giving and devising unto her such part of his real and personal estate, or some other for her use as shall be fully satisfactory to her, such widow may signify her dissent thereto before the judges of the superior court, or in the court of the county wherein she resides, in open court, within six months after the probate of said will, and then, and in that case, she shall be entitled to dower in the following manner, to wit: One third part of all the lands and tenements, and hereditaments, of which her husband died seized or possessed: Provided always, that any conveyances made fraudulently to children or otherwise, with an intention to defeat the widow of her dower hereby allotted, shall be held and deemed to be void, and such widow shall be entitled to dower in such lands, so fraudulently conveyed, as if no conveyance had been made; which said third part, shall be, and enure to her own proper use, benefit and behoof, for, and during the term of her natural life; in which said third part shall be comprehended the dWelling-house in which said husband shall have been accustomed most generally to dwell next before his death, and commonly called the mansion-house, together with the offices, out houses, buildings and other improvements thereunto belonging or appertaining.”
By the common law the widow was enitled to be endowed of all lands and tenements of which her husband was seized at any time during the coverture, and of which, any issue which she might have had might by possibility have been heir. (2 Black. Com.) This act of assembly introduces a change, and takes away her right of dower i n such lands as her husband, during his life, has bona jide conveyed without intention to defeat his widow of her dower. It is a question which merits very deliberate consideration, whether every deed made to children without a *330 valuable consideration, is not fraudulent and void as against the rights of the widow within the meaning of this act. Or in other words, whether the conveyance is not made subject to rights °f the wife, should she survive her husband. Was it not the policy of the act to permit such alienations of real estate as might be rendered necessary in the conduct of the husband’s affairs,, but to prohibit those which would not seem to be called for by any necessity ? to permit a bona fide sale or exchange, so to speak, for a valuable consideration, but to forbid mere gratuitous donations, as well as other fraudulent transfers? The former might be peculiarly consistent with our habits and institutions, which lean towards the free and easy alienation of all sorts of property. It would be consistent with the state of the country and its population. It would often enable the husband to better the situation of his family by selling a tract of unproductive land for the payment of a debt or some other useful purpose, or by disposing of a small tract of land in a long settled part of the country, ill suited to the condition of a large and growing family, and removing to, and purchasing a larger one for the same money, in some new state or territory. But it is difficult to see how liberal and enlightened views of the public good could sanction the right of a husband to dispose of his real estate to his children to the prejudice of that proportional share which the law has designated for the wife. A different construction of the act would probably render the provision against fraudulent conveyances by the husband almost inoperative. For if the husband can legally convey some property to his children for love and affection without being subject to the complaints of the wife, how much can he convey? Can he convey half? Can he convey two thirds? Can he convey nine tenths? At what point does his power end ? Is it to be left to the conscience of the jury or the chancellor in each case to determine what quantity alienated it will require to establish a fraudulent intention on the part of the husband or the invalidity of his conveyances? If so, variable indeed will be the criterion by which the rights of widows are to be regulated. Or is a husband to possess an unresisted power *331 of giving lands to his children, unless, indeed, it can be shewn in proof, apart from the fact of the conveyance, that he intended to defraud his wife of her dower? If so, the hopes of a widow for subsistence will rest upon a slender and precarious foundation. The husband has but to be silent — cautious not to announce in speech the fraud that he meditates, and all will be safe. He may execute as many conveyances to his children as his occasional pique or caprice, his folly or his feelings may prompt, or as their cunning may enable them to procure; yet if sufficient evidence of sayings and doings cannot be afforded to fix upon him the intention, by actual fraud, to defeat his wife of her dower, she is without redress; he may have his children rich and bis wife comparatively portionless. And all this, notwithstanding the section under consideration, professes to make an adequate provision for the support of widows, and proclaims it “highly just and reasonable that those, who by their prudence, economy and industry, have contributed to raise up an estate to their husbands, should be entitled to share in it.”
Already is a married woman subjected to sufficient hardships by the rules of our law. All her personal property becomes her husband’s absolutely immediately upon marriage. He is not at once the owner of her real estate, but he soon can, and usually does become so. It is sold or exchanged for something else, and the title of the latter vested in him. Or a deed is executed by him and his wife to a third person, and by that third person back to himself. True, the wife must be examined separate and apart from her husband as to her free consent, &c. But he who is acquainted with female nature and married life, knows that this is little more than a solemn farce. The husband is thus made owner of all his wife’s property, and upon his prudence and good fortune her fate is made entirely to depend. She may be reduced, even during his life, from affluence and ease to penury and suffering. This is bad enough. But the doctrine now contended for would go further, andwould not only subject her property to the claims of the husband’s creditors,it would also expose her expectations, even after his *332 death, wholly to the will and caprice of her husband, acting often in an incautious moment, and under improper influ-enCGS*
We repeat then, is it not the true construction of the act that every conveyance founded merely' upon meritorious consideration, is as much fraudulent and void against the widow as if the fraudulent intention were established by positive proof?
We forbear to give any decision upon this question in this case. It has not been argued. Nor is it essentia] to decide upon it; for we have no doubt that we have nothing to do with notice in inquiring whether a case is within the provisions of this act. It provides, “ that; all conveyances made fraudulently to children, or otherwise, with an intention to defeat the widow of her dower, shall be held and deemed to be void,” &c. The words are unambiguous. The moment the conveyance is proved to have been fraudulent in its inception within the terms used, the difficulty is at an end. It is void as against the dower, whoever may claim and however he may claim under the fraudulent conveyance. Any other interpretation would render the provision in very many instances entirely nugatory. Incon-vencies may sometimes result from this construction, but they are not believed to be of the same flagrant character with those which would follow a different one.
Judgment affirmed.